UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | )       No. 20-cr-10273-DJC |
| | ) |
| SPENCER HUGHES, | ) |
|      Defendants. | ) |
| | ) |

## MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

The Defendant, Spencer Hughes ("Hughes"), submits the following memorandum in support of his *Motion to Suppress Evidence*.

## BACKGROUND[1]

This case originated in Canada on about July 27, 2019, almost fifteen months before a search was executed at Hughes' home in Randolph, Massachusetts. A Canadian-based instant messaging application for mobile devices, Kik Messenger ("Kik"), contacted the Royal Canadian Mounted Police ("RCMP") to report that Kik had flagged an image suspected of being child pornography.[2] (Aff. ¶ 12.) Canadian law mandated Kik to report to the RCMP "any images . . . that would constitute **suspected** child pornography." (Aff. ¶ 9 (emphasis added).) Kik reported that:

> an individual utilizing the Kik username **trainreq** (who provided the name "S H", email address authorthecamel@gmail.com, and device brand and model Android SM-T380), used Kik to send an image of child pornography, as described herein.

---

[1] Facts taken from the *Affidavit of Nicole Sorrell in Support of an Application for a Search Warrant* ("Affidavit") (attached at **Exhibit A**) are cited as "Aff. ¶ ___."

[2] Kik sent a "Law Enforcement Report" to RCMP, who in turn forwarded the Report to the United States Department of Homeland Security, Homeland Security Investigations ("HSI"). (Aff. ¶¶ 9, 12.)

(Aff. ¶ 10 (emphasis in original).)  HSI connected the IP address used to access the Kik account to Hughes' residence in Randolph, Massachusetts.  (Aff. ¶ 15.)

On October 7, 2020, HSI Special Agent Nicole Sorrell ("Sorrell") applied for (and the magistrate judge issued) a search warrant for Hughes' residence and his person.  (**Exhibit B**, Application, Warrant and Return *In the Matter of the Search of the Premises at* ▮▮▮▮▮▮ *in Randolph, Massachusetts, and the Person of Spencer Hughes, YOB 1988*, No. 20-MJ-7353-JCB.)  The search warrant authorized a search of all electronic devices seized from the residence and Hughes.

The Affidavit dedicated several paragraphs to a general description of Kik, how Kik functioned on the user end, Kik's user agreement and Kik's monitoring policy vis-à-vis child pornography.  (Aff. ¶¶ 6-9.)  Among those policies is Kik's mandate under Canadian law to report images of "**suspected** child pornography" discovered on its platform.  (Aff. ¶ 9 (emphasis added).)  "Suspected" child pornography is identified through a program known as PhotoDNA.  (Aff. ¶ 11.)  Images identified as "suspected" child pornography are still "reviewed by a member of the Kik Law Enforcement Response team" before being forwarded to law enforcement.  (Aff. ¶ 11.)

Sorrell did not attach a copy of the image to the application, even though she knew that attaching the image was the "preferred practice" in the First Circuit.  (Aff. ¶ 12, n.6 (citing United States v. Brunette, 256 F.3d 14, 18-19 (1st Cir. 2001).)  Sorrell's reason was "to avoid unnecessary in-person interaction given the health concerns posed by the current pandemic."  (Aff. ¶ 12, n.6.)  Rather than submit the image, Sorrell offered a description of it.

> The image distributed by **trainreq** depicts a prepubescent girl who appears to be approximately 9 – 11 years old, posed lying on a floor completely nude with her feet up on a chair. The child's genital area is the focus of the

image, and the child appears to be spreading her buttocks to further expose
her genital area to the camera, which are clearly visible. There appears to
be no hip or breast development or pubic hair on the child, and child's face
is obscured by the positioning of her body.

(Aff. ¶12 (emphasis in original).)

Sorrell described her training summarily.

I have received training in the investigation of child exploitation offenses,
including child pornography, and have had the opportunity to observe and
review examples of child pornography (as defined in 18 U.S.C. § 2256).

(Aff. ¶ 1.)

The Affidavit identified no other steps toward investigating the image.  For example, the

government did not communicate with either the National Center for Missing and Exploited

Children ("NCMEC") or the National Child Exploitation Crime Centre ("NCECC") (the

Canadian counterpart to NCMEC) to determine whether the image was confirmed child

pornography.  Nor did the government consult with an expert, such as a pediatrician, to assess

whether the image was of a minor.

The image provided no basis for determining the age of the person.  First, the angle of the

picture made it impossible to see any portion of the person's head and face.  The person was

lying on her back with lower legs and feet resting flat on a chair seat.  The photograph was taken

at ground level through the legs of the chair toward the genital area.  Second, the angle did not

permit a view of the upper torso of the person.  As such, there could be no determination that the

person in the image had no breast development.  Based on this angle, hip development was

difficult, if not impossible to assess.  Third, while the person in the image did not appear to have

pubic hair, it is impossible to tell whether the person was a prepubescent child or an adult.  Upon

close examination, portions of the image, including the pubic area, appeared computer generated

or manipulated.  Finally, the hands and feet of the person appeared to be of a person older than 9 – 11 years.  (*Affidavit of Matthew D. Thompson* ¶ 6.)

In addition, other than identifying Hughes' residence and employment, the Affidavit contained no information about investigation into Hughes' background.  For example, there was no information suggesting that Hughes was a collector of child pornography.  And Sorrell omitted that the owner of the Kik account, **trainreq**, used the Kik messenger application very infrequently.  The Kik Law Enforcement Report showed that the account was used on only three occasions – May 5, 2019, May 9, 2019 and July 27, 2019 (the date the image was allegedly uploaded).  (**Exhibit C**, Kik Law Enforcement Report at USAO_0239-40.)[3]

On October 13, 2020, the government executed a search of Hughes' residence.  During the search, agents seized several electronic devices.[4]  Searches of those devices led to the discovery of additional images of child pornography.  The image described in the search warrant was not recovered on any of the devices.  (*Thompson Aff.* ¶ 7.)  During the search, agents interviewed Hughes in his home, where he made incriminating statements.  Hughes was arrested after the search and charged with one count of receiving and one count of possessing child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(a)(5)(B).  A grand jury eventually returned a two-Count Indictment charging the same offenses.

---

[3] These three dates were the only dates identified in the report where a "BIND" was made. Kik Law Enforcement Guide states that "A BIND is generated when a successful network connection is established. A new BIND will generate if the user force-closes and opens the app or changes Wi-Fi data locations."  (Ex. C at USAO_0235.)

[4] The devices are identified in the Return.  (Ex. B.)

## DISCUSSION

### A.  Probable Cause

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by oath or affirmation."  U.S. Const., amend. IV.  A warrant must not be based on conclusory statements in an affidavit.  A warrant also cannot be based on "a mere ratification of the bare conclusions of others."  Texas v. Brown, 460 U.S. 730, 742 (1983).  Rather, information in an affidavit must "provide the magistrate with a substantial basis for determining the existence of probable cause."  Illinois v. Gates, 462 U.S. 213, 239 (1983).   The affidavit must give someone of "reasonable caution" reason to believe that a crime has been committed and that evidence will be found at that location at the time of the search.  Id.; United States v. Vigeant, 176 F.3d 565, 569 (1st Cir. 1999).  In making this decision, the magistrate is limited to the information in "the four corners of the affidavit."  Id. at 569.

The supporting affidavit must establish "in some trustworthy fashion" that there is a "substantial basis" to conclude the existence of probable cause.  Id.; United States v. Taylor, 985 F.2d 3, 5 (1st Cir. 1993).  "'Mere suspicion, rumor, or strong reason to suspect [wrongdoing]' are not sufficient."  Vigeant, 176 F.3d at 569 (quoting United States v. Han, 74 F.3d 537, 541 (4th Cir. 1996)).

"[P]robable cause to issue a warrant must be assessed by a judicial officer, not an investigating agent."  Brunette, 256 F.3d at 18.  "This judicial determination is particularly important in child pornography cases, where the existence of criminal conduct often depends solely on the nature of the pictures."  Brunette, 256 F.3d at 18.  To establish probable cause to believe an image constitutes child pornography, the government must show that the image depicts sexually explicit conduct *involving a minor*, that is, a person under the age of 18.  See 18

U.S.C. § 2256(1) and (8).  Yet, determining whether an image is that of a child "will almost always involve, to some degree, a subjective and conclusory determination on the part of the viewer."  Id.  This "inherent subjectivity is precisely why the determination should be made by a judge, not an agent."  Id.

For this reason, the "best practice is for an applicant seeking a warrant based on images of alleged child pornography to append the images *or* provide a sufficiently specific description of the images to enable the magistrate judge to determine independently whether they probably depict real children."  United States v. LaFortune, 520 F.3d 50, 58 (1st Cir. 2008) (citations omitted).  "An officer who fails to follow this approach without good reason faces **a substantial risk** that the application for a warrant will not establish probable cause."  United States v. Syphers, 426 F.3d 461, 467 (1st Cir. 2005) (emphasis added).  It is "error to issue the warrant absent an independent review of the images, or at least some assessment based on a reasonably specific description."  Brunette, 256 F.3d at 19.

This Court should suppress all evidence seized under the warrant because it was not supported by probable cause.

    (1) The Application did not include the image of suspected child pornography but instead included a misleading description that at a minimum was made with reckless disregard for the truth;

    (2) Sorrell was not qualified to assess whether the image depicted a minor (or that the image was that of an actual person instead of a virtual image);

    (3) After excising the misleading description from the Affidavit, there could be no finding of probable cause;

(4) The information was stale where it was almost fifteen months old and the Affidavit

failed to establish that Hughes was a collector of child pornography; and

(5) Under the circumstances here, the good faith exception to the exclusionary rule does

not apply.

The search warrant depended on Sorrell's misleading description of a single obscured

image for probable cause to believe that evidence of a crime involving child pornography would

be found at Hughes residence almost fifteen months after the image was first flagged.

> **1. The Application did not include the image of suspected child pornography but instead included a misleading description that at a minimum was made with reckless disregard for the truth.**

The decision not to submit the image to the magistrate for an independent assessment was

not justified.  Sorrell's justification not to submit the image was the need "[t]o avoid unnecessary

in-person interaction given the health concerns posed by the current pandemic."[5]  (Aff. ¶ 12, n.

6.)  By October 2020, however, the federal courts were functioning with in-person proceedings.[6]

There was no reason why the image could not have been submitted with the application.

Submitting the actual image is the best way to ensure that the probable cause determination is

made by a detached and neutral magistrate, rather than the inherently "subjective and conclusory

determination on the part of [an agent]."  Given the image here, attaching the image to the

application was the best practice because age was a difficult to assess given the positioning of the

person.

---

[5] Sorrell was "aware that the 'preferred practice' in the First Circuit is that a magistrate judge view images relied upon for the issuance of a search warrant," and cited cases stating this preference.  (Aff. ¶ 12, n. 6.)

[6] For example, below-signed counsel appeared at the courthouse to represent a grand jury witness on September 24, 2020 and October 1, 2020.  Counsel also appeared at the courthouse for a Rule 11 hearing on September 25, 2020.  By October 5, 2020, the in-person jury trials resumed in the federal court in Springfield.

Instead of submitting the image for an independent judicial assessment, Sorrell described the image.  The decision to describe an image, however, is not the preferred alternative because, as the Brunette Court cautioned, it was susceptible to Sorrell's inherently subjective and conclusory viewpoint.  Brunette, 256 F.3d at 18.  Once the decision was made to rely on a description, Sorrell took a "substantial risk" that her description would be insufficient to establish probable cause.  Not only was Sorrell's description insufficient, it was inaccurate and misleading, further undermining a probable cause finding.  She effectively usurped the magistrate's duty to render a fair and impartial determination on probable cause.  See, e.g., United States v. Perkins, 850 F.3d 1109, 1118 (9th Cir. 2017) ("By providing an incomplete and misleading recitation of the facts *and withholding the images*, Agent Ensley effectively usurped the magistrate's duty to conduct an independent evaluation of probable cause.") (emphasis in original).  The magistrate was already at a disadvantage without the image.  A thorough and accurate description was paramount to a fair and objective determination.

Absent the image, Sorrell should have included a "detailed description of the physiological features of the persons depicted in those images (i.e., by describing body proportion, growth and development)."  Syphers, 426 F.3d at 466-67 (and cases cited).  Failure to provide such details makes the magistrate's ability to determine age "a tough call."  Id.  Given the positioning of the person in the image, it was impossible for Sorrell to accurately describe body proportion, growth and development.  The description that Sorrell did provide was misleading.  It was made either intentionally or with reckless disregard for the truth.

Sorrell relied on three observations to support her conclusion that the person was 9 – 11 years old — hip development, breast development and pubic hair.  Her claim that the person in the image had no breast development was at a minimum made with reckless disregard for the

truth.  The positioning of the person in the image did not allow for a determination of breast development.  Claiming otherwise was a clear effort to influence the magistrate.

Hip development was also difficult to discern from the position of the person.  To claim the person had no hip development was misleading.  Again, attaching the actual image was the best practice because a probable cause determination required the magistrate to make her own assessment about the characteristics of the person, including whether the image permitted a determination on hip development.

Describing a lack of pubic hair was also not helpful to the magistrate.  While the person in the image did not appear to have pubic hair, Sorrell made no effort to explain why, in this case, that was evidence that the person was a prepubescent girl.  The poor quality of the image made it impossible to determine whether the image was that of a prepubescent girl or an adult actor who had shaved that area.  Zooming in on the area caused the image to pixelate and become even more distorted.  Indeed, a review of the actual image leaves the impression that the image was computer generated or manipulated.

Determining whether the image was that of a real person or a virtual person was critical to a probable cause determination.  Computer generated images and pornographic images of adults who look like minors do not fall under the definition of child pornography.  See Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002).  In Free Speech Coalition, the Court held that it violates the First Amendment to prohibit pornography that is either computer-generated child pornography or pornography that depicts adults who look as if they are minors.  Id. at 241.  Thus, "the government must prove as elements of the crime both that the image depicts an actual child, not a virtual child, and that the person depicted is a child, not an adult, to sustain a child pornography conviction."  Syphers, 426 F.3d at 465.  The magistrate should have been permitted

to examine the image to determine whether it was an actual minor.  Based on the positioning of the person in the image and the poor quality, the image could just as easily have been an adult actor or computer generated.

> **2.   Sorrell was not qualified to assess whether the image depicted a minor (or that the image was that of an actual person instead of a virtual image).**

Sorrell's conclusion that the image was that of "a prepubescent girl who appears to be approximately 9 – 11 years old" was not one that she was qualified to make, particularly based on the lack of details that could be discerned from the image.  Nothing in the Affidavit suggested she had the training to make that determination.  The lack of any training for assessing age rendered her conclusion about the person's age "foundationless expert testimony."  Vigeant, 176 F.3d at 573 (quoting United States v. Weber, 923 F.2d 1338, 1346 (9th Cir. 1990).  Describing the image as a prepubescent girl 9 – 11 years old was an effort to remove the decision-making process from the magistrate.

Sorrell also did not have the experience or training to make such a determination.  As for her experience, Sorrell stated:

> I have been an agent of HSI since 2009.  As part of my duties, I am authorized to investigate violations of the laws of the United States, including criminal violations relating to child exploitation, child pornography, coercion and enticement, and transportation of minors, including but not limited to violations of 18 U.S.C. §§ 2422, 2423, 2251, and 2252A.

(Aff. ¶ 1.)  But Sorrell had only been a part of the Child Exploitation and Forensic Group since July 2017.  (*Thompson Aff.* ¶ 8.)  This information was omitted from the Affidavit even though it had a direct bearing on Sorrell's experience and her ability to assess age.  This information was critical to the magistrate's probable cause finding.

The First Circuit has found that years of experience investigating child pornography is relevant to an affiant's ability to assess age.  In United States v. Morel, 922 F.3d 1 (1st Cir.

2019), a New Hampshire detective described six suspected child pornography images rather than attach the actual images to the warrant application. Id. at 5.  The detective described four of the girls depicted in three of the six images as under the age of ten.  Id. at 11.  The detective described another four girls in the remaining three images as "under the age of 13."  Id. at 5. "[H]e did not, in this application, physically describe the girls other than to state his belief that they were under the ages of 10 and 13."  United States v. Morel, No. 14-cr-148, 2017 U.S. Dist. LEXIS 57959 at *8-9 (D.N.H., April 14, 2017).

In upholding the detective's opinion, the Court focused on his years of experience, particularly his years of experience investigating child pornography.[7]  Id. at 12.  That experience included being in law enforcement for over two decades, "specialized training in child abuse and exploitation cases," and being "on the Internet Crimes Against Children Task Force **for nearly a decade**."  Id. (emphasis added).  Based on this experience, the Court found that the detective's "training and experience likely informed his belief that the girls depicted in the images were under the age of eighteen."  Id.

By claiming that the image was of a prepubescent girl about 9 – 11 years old, Sorrell sought to avail herself of the Morel Court's observation that "it was highly improbable" that an officer with the detective's experience and training "would mistake an eighteen-year-old girl for an under-ten-year-old girl."  Id. at 11.  But the Court did not describe any of the six images, which likely did not suffer from the same dearth of details that exist with the image in this case.

---

[7] The Court did not analyze the First Circuit's best practice of attaching the image to the application or providing a reasonably sufficient description because the warrant was issued out of a state court and therefore First Circuit best practices did not apply.  Id. at 11.  Instead, the Court decided only whether the warrant established probable cause to believe the images were of girls under 18.

More importantly, Sorrell did not have anywhere near the training and experience of the detective in Morel.

An accurate presentation of her experience was critical for the magistrate to determine Sorrell's qualifications to assess age. Yet Sorrell, by omitting her actual years of experience, created the misleading impression that she had over ten years of experience investigating child pornography cases, which would have placed her on equal footing with the decade of experience of the detective in Morel. Sorrell's experience, however, brought her closer to the affiant in Brunette, supra, a case Sorrell cited in her Affidavit. (Aff. ¶ 12, n.6.)

In Brunette, the affiant had "less than two years' experience investigating child pornography crimes." Brunette, 256 F.3d at 18. The Court highlighted the affiant's lack of experience among the reasons why the affiant's determination should not have been a substitute for the magistrate's. Id. Sorrell's limited experience was much like the affiant in Brunette. Sorrell's understanding of Brunette alerted her that experience was a critical piece of information for a magistrate to consider, particularly where she was attempting to opine on the difficult task of determining age. Nothing in the Affidavit suggested that Sorrell was qualified to make this determination.[8]

Nor did the government take additional investigative steps to aid the magistrate in assessing age. The government had fifteen months to investigate the image and confirm that the image was an actual child. For example, in Brunette, the Court examined a Ninth Circuit case,

---

[8] Sorrell described the extent of her training in the Affidavit.

> I have received training in the investigation of child exploitation offenses, including child pornography, and have had the opportunity to observe and review examples of child pornography (as defined in 18 U.S.C. § 2256).

(Sorrell Aff. ¶ 1.)

United States v. Smith, 795 F.2d 841 (9th Cir. 1986), a case where the government failed to include an image.  The Brunette Court distinguished the facts in Smith, noting that the affiant there was not only experienced, but his description was at least "bolstered by a much stronger investigation prior to applying for the warrant, including interviews with the suspect, some of the victims, and a pediatrician who confirmed that the girls pictured were under eighteen."  Brunette, 256 F.3d at 18-19.

Here, there was no investigation of the image beyond a simple view by Sorrell.  The government did not interview Hughes.  It did not consult with an expert, such as a pediatrician, to help with what was a difficult image to assess age.[9]  The government also did not consult with NCMEC nor NCECC to determine whether the image was already confirmed child pornography. These were easy investigative steps that could have provided the magistrate with important information to make an otherwise tough call.  The government chose not to investigate further and not to attach the image.  Instead it resorted to providing a misleading description of the only information in the affidavit on which a probable cause finding could be based.

### 3. After excising the misleading description from the Affidavit pursuant to Franks v. Delaware, 438 U.S. 154 (1978), there could be no finding of probable cause.

Based on Sorrell's incomplete and misleading description, Hughes requests a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978).  A defendant is entitled to a hearing to challenge the truthfulness of statements made in a search warrant affidavit if he makes a substantial showing that: "(1) a statement in the affidavit was knowingly and intentionally false, or made with reckless disregard for the truth, and (2) the falsehood was necessary to the finding

---

[9] The First Circuit has held that although an expert is not a requirement, "[a]s a matter of good practice, of course, the government can go beyond its exclusive reliance on [an image alone] if it chooses to do so."  LaFortune, 520 F.3d at 58, n.10.

of probable cause." United States v. Charles, 213 F.3d 10, 24 (1st Cir. 2000).  At the hearing, the defendant bears the burden of showing by a preponderance of the evidence that the affiant in fact made a statement that was knowingly false or with reckless disregard for the truth, and that but for the false statement, the affidavit would have been insufficient to establish probable cause. Franks, 438 U.S. at 156; United States v. Tzannos, 460 F.3d 128, 136 (1st Cir. 2006).  If the remaining contents in the affidavit are insufficient to show probable cause, then evidence seized under the warrant must be suppressed.  Franks, 438 U.S. at 156.

Sorrell's description that the image showed that the person had no breast development was false and made either intentionally or recklessly.  The image also did not permit a determination that the person had no hip development.  In addition, while the image showed no pubic hair, it did not explain that it was not possible to determine whether the person could have been an adult actor who shaved the area.  It also would have permitted the magistrate to determine whether the image was computer generated rather than a real person.

Finally, Sorrell's omission of her actual experience in child pornography cases influenced the magistrate.  "[M]aterial omissions by an affiant are sufficient to constitute the basis for a Franks hearing."  Charles, 213 F.3d at 24.  Sorrell omitted that she had only been investigating child pornography cases since June 2017.  Instead, she left the impression that that she had over a decade of experience in this area.  (Aff. ¶ 1.)  Under Brunette and Morel, her level of experience was critical to the probable cause analysis.  Sorrell should have known that accurately presenting her years of experience in this area was critical.  Omitting this information was "almost calculated to mislead."  Vigeant, 176 F.3d at 573 (citing United States v. Reilly, 76 F.3d 1271, 1280 (2d Cir. 1996).

This case illustrates why the preferred practice in the First Circuit is to include the photograph when applying for a search warrant.  Including the image would have eliminated questions about the sufficiency of Sorrell's description and her lack of qualifications to make an assessment.  A Franks hearing is warranted.

> **4.  The information was stale where it was almost fifteen months old and the Affidavit failed to establish that Hughes was a collector of child pornography.**

Finally, the information presented in the warrant was stale.  Before a warrant may issue, there must be probable cause to believe that: (1) a crime has been committed (the commission element); and (2) evidence of the crime will be found at the place to be searched (the nexus element) (3) at the time of the search (the temporal element).  See United States v. Ribeiro, 397 F.3d 43, 48 (1st Cir. 2005); United States v. Zayas-Diaz, 95 F.3d 105, 110-111 (1st Cir. 1996).  Both the commission and nexus elements include a temporal component.  Zayas-Diaz, 95 F.3d at 113.  The magistrate must determine "whether the totality of the circumstances reasonably inferable from the affidavit demonstrates a 'fair probability' that evidence material to the 'commission' of the probable crime will be disclosed at the search premises at about the time the search warrant would issue, rather than at some remote time."  Id.  As a result, information about the criminal activity must be close enough in time to the requested search otherwise the information will be considered too stale to establish a present nexus.

In child pornography cases, courts have been willing to extend the time before information is considered stale **where the affidavit establishes that the suspect was a collector** of child pornography.  "[T]he value of that inference in any given case depends on the preliminary finding that the suspect is a person 'interested in' images of child pornography."  United States v. Raymonda, 780 F.3d 105, 114 (2d Cir. 2015).  "The alleged 'proclivities' of

collectors of child pornography. . . are only relevant if there is probable cause to believe that [the defendant] is such a collector."  United States v. Coreas, 419 F.3d 151, 156 (2d Cir. 2005).

Characteristics of a collector include evidence that a person subscribed to child pornography websites, had an "extreme interest in young children" or downloaded multiple child pornography images from a known distributor.  For example, in United States v. Rosenbeck, No. 09-30042-DJC, 2011 U.S. Dist. LEXIS 68070 (D. Mass. June 24, 2011) this Court found information that was a little over six months old was not stale based on several facts absent here. First, the government searched the suspect's computer six months before the warrant and discovered about 778 images and 60 videos of suspected child pornography.  Id. at *6-*7.  When the images were compared against a NCMEC database, over 150 were identified as known child pornography involving a child under the age of 18.  Id. at *7.  Second, the suspect had made payments toward "a subscription to a known child pornography website" continuously for about fifteen months before the warrant application.  Id. at *9-*13.  Based on this information, the Court found that "there was ample evidence in the affidavit to suggest that **Rosenbeck was a collector** of child pornography."  Id. at *22 (emphasis added).

Similarly, in United States v. Morales-Aldahondo, 524 F.3d 115 (1st Cir. 2008), the First Circuit held that information three-years-old was not stale because the affidavit established that the target was a collector of child pornography.  Id. at 119.  The Court noted that it was not the number of days but rather the "nature of the information, the nature and characteristics of the suspected criminal activity, and the likely endurance of the information."  Id.  There, the affidavit established that the defendant's brother, with whom the defendant lived, was a large purchaser of child pornography and had "purchased access to various child pornography sites." Id. at 117.  As such, the Court held the delay did not render the information stale because

"**customers of child pornography sites** do not quickly dispose of their cache."  Id. at 119

(emphasis added).

Here, the Affidavit described only a general background on child pornography and

computers, and "characteristics common to consumers of child pornography."  (Aff. ¶¶ 26.)[10]

Sorrell then concluded that the user of **trainreq** "likely displays characteristics common to

consumers of child pornography."   (Aff. ¶ 27.)  The Affidavit contained no information that

Hughes had a preexisting predilection for child pornography.  Raymonda, 780 F.3d at 115.

Hughes did not have a criminal history of any kind.  There was no suggestion that Hughes had a

history involving the exploitation or abuse of children.  Hughes did not purchase a subscription

to a child pornography site.  Hughes did not purchase images of child pornography.  There was

no information suggesting that Hughes was involved in continuous and ongoing sharing of

digital images. There was also no information suggesting that Hughes was part of a chat group

known to discuss and share child pornography (or any pornography).  For example, although Kik

groups can apparently be identified through group names containing a hashtag, (Aff. ¶ 7), there

was no information that Hughes participated in any group that was identifiable by any name,

much less a name suggesting that the group shared child pornography.  Rather, the information

available to HSI was that Hughes only used Kik three times, information that was omitted from

the Affidavit.

The only information that Sorrell relied on for this conclusion was the single upload of an

image that may not have even been child pornography.  (Aff. ¶ 27.)  This information, without

more, did not reasonably show that Hughes was a collector of child pornography and that images

---

[10] The Affidavit contains two Paragraphs numbered 26.

would be found on his mobile device fifteen months later.[11]  Even in cases where courts found a single upload indicative of a collector, some additional factor permitted such a conclusion.  See, e.g., United States v. Seiver, 692, F.3d 774, 775 (7th Cir. 2012) (defendant downloaded video, extracted three still images, and uploaded images to website.)  These facts distinguish Hughes from every other child pornography case in which the passage of time did not render information stale.

### 5.  The good faith exception does not apply.

The good faith exception to the exclusionary rule does not save the search warrant.  "The usual remedy for seizures made without probable cause is to exclude the evidence wrongfully seized."  Brunette, 256 F.3d at 19.  Under the United States v. Leon, 468 U.S. 897 (1984), the exclusionary rule does not apply "where an objectively reasonable law enforcement officer relied in good faith on a defective warrant because suppression in that instance would serve no deterrent purpose."  Brunette, 256 F.3d at 19 (citing Leon, 468 U.S. at 920-21 (1984).  The good faith exception does not apply, however, where there are "numerous material omissions excluded from – and false and misleading statements included in – the underlying affidavit."  Vigeant, 176 F.3d at 572.  The government bears the burden of showing that its officers acted with objective good faith.  Vigeant, 176 F.3d at 572.  Evidence should also be suppressed where the warrant affidavit was so lacking in probable cause that "a reasonably well-trained officer in petitioner's position would have known that his Affidavit failed to establish probable cause and that he should not have applied for a warrant."  Vigeant, 176 F.3d at 572 (internal citations and

---

[11] The image in question was NOT discovered on the any of the devices that were searched, including the Android SM-T380 that was seized.  This fact casts doubt on the blanket assertion that images may be expected to be found on a computer months or years later, even if they have been deleted.  (Aff. ¶ 33.)  It underscores why information of a collector is necessary to overcome staleness.

quotations omitted).  The good faith exception does not apply when "agents were reckless in not including in the affidavit information which was known or easily accessible to them."  Id. (internal citations and quotations omitted).  Suppression is an appropriate remedy where the magistrate was "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth."  Leon, 468 U.S. at 923.

The good faith exception does not apply here.  By the time she had submitted her Affidavit, the case law in this area was clear.  Cf. Syphers, 426 F.3d at 467 (applying good faith exception because Brunette decided only four months before the warrant and Free Speech Coalition decided after the warrant.)  Under the circumstances, the best practice was to submit the image.  Sorrell knew that by failing to do so, she ran the substantial risk that an insufficient description would establish probable cause to believe that the person in the image was an actual minor.  Sorrell's description of the image was misleading and insufficient to sustain a finding of probable cause.

## CONCLUSION

For these reasons, Hughes states that all evidence seized under the search warrant and the fruits of that search must be suppressed.

SPENCER HUGHES
By his attorney,

/s/ Matthew D. Thompson
Matthew D. Thompson, Esq.
B.B.O. No. 655225
Butters Brazilian LLP
669 Boylston Street, 12th Floor
Boston, MA 02116
(o) 617-367-2600
(f) 617-367-1363
Dated: June 8, 2021                    thompson@buttersbrazilian.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.


 /s/ Matthew D. Thompson
Matthew D. Thompson