UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No.: 20-CR-10273-DJC |
| v. | ) | |
| | ) | |
| SPENCER HUGHES | ) | |
| | ) | |
| Defendant. | ) | |

### THE UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS[1]

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this response in opposition to Defendant Spencer Hughes' Motion to Suppress Evidence. [DE 53, 54]. For the reasons stated herein, the Defendant's motion should be denied without a hearing.

### STATEMENT OF FACTS

### I.      Search Warrant Affidavit

On or about October 7, 2020, Homeland Security Investigations ("HSI") Special Agent Nicole Sorrell submitted an affidavit in support of a search of the Defendant's residence located in Randolph, Massachusetts, and the Defendant's person.[2] Magistrate Judge Jennifer C. Boal reviewed Special Agent Sorrell's affidavit submitted in support of the application, as well as the accompanying documents, and found probable cause to believe that contraband, evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 2252A (possession

---

[1] On July 6, 2021, the Government filed an Unopposed Motion for Leave to File Response in Opposition to Defendant's Motion to Suppress that Exceeds Twenty Pages. [DE 57]. The Government has attached this Motion as Exhibit 3. While the Court has not yet ruled on the Government's motion, in an abundance of caution, the Government has filed the instant response in light of the response deadline, which is today.

[2] Citations to the search warrant affidavit will be referred to as: "SW Aff. ¶ __ ." The search warrant affidavit is attached as Exhibit 1.

and distribution of child pornography) would be found at the Defendant's residence and on the Defendant's person.  Magistrate Judge Boal signed the search warrant on October 7, 2020, and the search warrant was executed by law enforcement on October 13, 2020.

The search warrant affidavit outlined Special Agent Sorrell's investigation in this case. In the affidavit, Special Agent Sorrell provided a summary of her background and experience, including having been employed as an HSI Special Agent since 2009.  SW Aff. ¶ 1 (Exhibit 1). As part of her official duties, Special Agent Sorrell was, and remains, authorized to investigate child exploitation and child pornography offenses.  *Id.*  Special Agent Sorrell has received training in the investigation of child exploitation offenses, including child pornography, and has had the opportunity to review examples of child pornography.  *Id.*  Employing the probable cause standard, Special Agent Sorrell set forth the facts in support of the issuance of the search warrant.  *Id.* at ¶ 4.  In support of the affidavit, Special Agent Sorrell specified that that affidavit was being submitted "for the limited purpose of securing a search warrant" and further that she "had not included each and every fact known to [her] concerning this investigation" but instead, had set forth only the facts necessary to establish probable cause.  *See id.* at ¶ 5.

The next section of the affidavit explained the background of Kik Messenger ("Kik") and Kik reports since Kik provided the lead that led to this investigation.  Kik is a mobile application designed for chatting and messaging*.  Id.* at ¶ 6.  In order to use Kik, a user must download the application to a mobile phone, computer, or other digital device via a service such as the iOS App Store, Google Play Store, Apple iTunes, or a similar provider.  *Id.*  Once the application is downloaded and installed, the user is prompted to create an account and username.  *Id.*  The user also creates a display name, which is the name that other users see when transmitting messages

back and forth.  *Id.*  Using the messaging feature, Kik users are able to send each other text messages, images, and videos.  *Id.*

Kik monitors their platform for illegal content, including child sexual abuse material.  *Id.* at ¶ 8.  As is further explained in the affidavit and in the Kik Glossary provided in connection with the Kik report, one of the ways that Kik monitors its platform is through the use of PhotoDNA.  *Id.* at ¶ 11.  PhotoDNA is a technology used by Kik that is running on all profile picture and background photo uploads and a percentage of all content uploaded to Kik in order to flag images that may depict suspected child pornography.  *See id; see also* Kik Interactive, Inc. Child Sexual Abuse and illegal Material Report and Glossary (Exhibit 2).  PhotoDNA creates a unique digital signature (known as a "hash") of an image, which is then compared against the hashes of other photos to find copies of the same image.  SW Aff. ¶ 11 fn. 5.  So, PhotoDNA compares the hash value of images sent using the Kik platform to a database of previously identified images of suspected child pornography.  *Id.*  When PhotoDNA detects a suspected child pornography file, it creates a report and sends it to the Kik Law Enforcement team. According to the documentation provided by Kik, all suspected child pornography images and videos reported using PhotoDNA, as well as any related user communications, are visually reviewed by a member of the Kik Law Enforcement Response team before a report is forwarded to law enforcement authorities.  *Id.* at ¶ 11.  Kik trains the employees that comprise its Law Enforcement Response Team on the legal obligation to report apparent child pornography.  *Id.* At the time of the Report in this case (July 29, 2019), these employees were trained on the Canadian statutory definition of child pornography (which is very similar to the definition in the United States) and how to recognize child pornography on Kik's platform.  *See id.*  Kik makes reports to law enforcement in accordance with this training.  *Id.*  Kik removes the content from

its communications system and closes the user's account upon discovery of suspected child pornography.  *Id.*

Kik was alerted to an image of child pornography that was distributed by the account "trainreq" on July 27, 2019, through the use of PhotoDNA technology.  *Id.* at ¶ 10.   That image of child pornography is described in the search warrant affidavit as follows:

> [T]he image distributed by trainreq depicts a prepubescent girl who appears to be approximately 9 – 11 years old, posed lying on a floor completely nude with her feet up on a chair.  The child's genital area is the focus of the image, and the child appears to be spreading her buttocks to further expose her genital area to the camera, which are clearly visible.   There appears to be no hip or breast development or pubic hair on the child, and child's face is obscured by the positioning of her body.

*Id.* at ¶ 12.[3]   In connection with the distribution of this image of child pornography, Kik generated a Kik Report on July 29, 2019.  *Id.* at ¶¶ 10, 12.  This Report included a copy of the image.  It also included information regarding the trainreq account.  The account was registered with the first name "S," and the last name "H," consistent with the Defendant's initials, "S.H.," for Spencer Hughes.  SW Aff. ¶ 10.  The email address provided to register the account was authorthecamel@gmail.com.  *Id.* The brand and model of the device used to register the account was an Android SM-T380.  *Id.*  Kik also provided IP addresses used by the trainreq account,

---

[3] The Government will hand deliver a copy of this image to chambers for the Court's review in coordination with the Courtroom Deputy.  As the image is contraband material, the Government will retake custody of the image following the Court's review.

While not included in the description of the image provided in the search warrant affidavit, as the Court will clearly see in the image provided to chambers, the room depicted in the image appears to be a child's bedroom.  Bookshelves are visible in the background with stuffed animals, dolls, and a globe.  There is also a poster of what appears to be a female on the wall in the background.  The child's hands are small.  This is further indicia that the female depicted in the image is, in fact, a child.

including the IP address used by the trainreq account on July 27, 2019 to send the image of child pornography.  *Id.* at ¶ 13.[4]

This report was initially sent to the Royal Canadian Mounted Police (as Kik was, at the time of the offense, located in Ontario, Canada, and therefore governed by Canadian law).  *Id.* at ¶¶ 9, 11.  The Royal Canadian Mounted Police, National Child Exploitation Coordination Center ("NCECC"), then forwarded the report to Homeland Security Investigations ("HSI") in Ottawa, Canada.  In or around December 2019, HSI in Boston received the Kik Report regarding the trainreq account.  As is further outlined in the search warrant affidavit, Special Agent Sorrell took various steps to identify the suspected user of the trainreq Kik account that distributed the image of child pornography using the Kik platform on July 27, 2019.  *Id.* at ¶¶ 13-25.  Law enforcement was able to identify that the IP address used to distribute the image of child pornography was registered to the Defendant's Comcast account at his residence, located in Randolph, Massachusetts.  *Id.* at ¶¶ 13-16.  Comcast identified the email address associated with the Defendant's account as: thecamel@comcast.net (note that the trainreq Kik account was registered with the email account authorthecamel@gmail.com).  *Id.* at ¶ 15.  Through law enforcement's investigation, the Defendant was identified as a police officer with the Lincoln Police Department and a registered owner of firearms.  *Id.* at ¶¶ 20-22.

In addition to outlining the information related to the Kik Report, the identification of the Defendant's residence, and the facts that tie the Defendant to that residence, Special Agent Sorrell also included information, based upon her training and experience, about child pornography offenders and their use of electronic devices.  For example, Special Agent Sorrell explained, based upon her training and experience investigating computer-related crimes,

---

[4] Kik advises in their law enforcement guide that, in connection with PhotoDNA Reports, the Kik law enforcement response team will provide the "most recent 30 days of IP addresses, if available."  *See* Ex. 2, at 3.

including child pornography offenses, that individuals interested in child pornography use computers and mobile devices, such as smartphones and tablet computers, to interact with one another and to share child pornography. *Id.* at ¶ 25. Special Agent Sorrell also specifically discussed the use of mobile applications, such as Kik, to interact with "other like-minded offenders or with potential minor victims." *Id.* Special Agent Sorrell also explained that, with digital technology, communications by way of computer or other electronic device can be maintained indefinitely (either intentionally or unintentionally), *i.e.*, these records can be recovered much later. *Id.*

Special Agent Sorrell also explained that, "based on [her] previous investigative experience related to child exploitation investigations, and the training and experience of other law enforcement officers with whom [she had] discussions," she knows that there are certain characteristics common to individuals who possess and distribute child pornography, who she refers to as "consumers of child pornography." *Id.* at ¶ 26. These characteristics include the fact that consumers of child pornography maintain their child pornography collection for several years and that evidence of child pornography can be located on computers and other digital devices through forensic tools for an extended period of time. *Id.* Furthermore, when individuals, like the Defendant, use a portable device such as a mobile device to access child pornography it is more likely than not that evidence of this access will be found in a home. *Id.* As Special Agent Sorrell details, the user of the trainreq account displayed characteristics common to consumers of child pornography based upon his conduct. *Id.* at ¶ 27. And, in order to distribute child pornography, the Defendant necessarily had to acquire and possess child pornography. *Id.*

Based upon all of this information, Magistrate Judge Boal found that there was probable cause to search the Defendant's residence and his person for evidence of violations of child pornography offenses.

## II.      Search Warrant for the Defendant's Residence & Interview of the Defendant

On October 13, 2020, law enforcement executed the search warrant at the Defendant's residence in Randolph, Massachusetts.   The Defendant was encountered in the parking lot adjacent to his residence.   Law enforcement approached the Defendant and identified themselves.   The Defendant was informed about the search warrant for his residence and his person.  The Defendant was searched and a Glock 19 pistol, a knife, a magazine containing 9 mm ammunition, and a wallet containing identification was removed from the Defendant's person.   The Defendant provided law enforcement with the keys to his vehicle and to his residence.

The Defendant was interviewed by law enforcement in his residence after waiving his *Miranda* rights both orally and in writing.   That interview is audio recorded.   During the interview, the Defendant confirmed that he purchased the residence in 2014 or 2015 and that he resided there alone.  The Defendant confirmed that Comcast was the provider of his internet and that his router was password-protected.  The Defendant stated that he owned a laptop computer, desktop computer, and a cell phone, which were for personal use.  The Defendant stated that he had used email, Facebook, Instagram, and Twitter on all of his devices and provided his email address, which he identified as authorthecamel@gmail.com—the same email address associated with the Kik account that distributed child pornography on July 27, 2020.  While the Defendant confirmed that he had a Kik account, he stated that he could not remember his username for the account.  The Defendant stated that he had last used Kik the previous day.

7

The Defendant told law enforcement that he did not "believe" he would have child pornography on his phone, which he understood to be images of people "under 18" and "underdeveloped." The Defendant indicated that he did not recognize the trainreq username for Kik. However, the Defendant explained that he registered his Kik account with only his initials "S.H.," and the email address authorthecamel@gmail.com.

During the interview, law enforcement advised the Defendant that the image of child pornography that was sent by the trainreq username was sent from a Samsung tablet. The Defendant indicated that he had never had a Samsung tablet. Later in the interview, the Defendant again denied ever having a Samsung tablet. However, a Samsung tablet was recovered during the search of the Defendant's residence in the Defendant's bedroom. When confronted with this fact, the Defendant responded, "I got nothing for that." Ultimately, during a forensic preview of the device, the Kik application was located on the Samsung tablet, which was a SM-T380 tablet, consistent with the Kik Report.

During the search of the Defendant's residence, law enforcement recovered multiple electronic devices and external hard drives, which will be discussed in more detail *infra*. During the interview, the Defendant provided written consent to search his vehicle. The Defendant also provided written consent for his Samsung cellular device, identified in the Consent to Search form as a Samsung Note 9. This device was located in the Defendant's vehicle. The Defendant also provided the password for the device to law enforcement.[5]

---

[5] The Defendant's cellular phone was recovered from inside the Defendant's vehicle based upon the Defendant's consent to search. While the Government previously stated on the record at the status hearing on May 10, 2021, that the Court's ruling on this motion would be dispositive of the case if the Court ruled in favor of the Defendant, that statement was incorrect. At a minimum, the Government would proceed with the evidence located on the Defendant's phone. As discussed in more detail herein, approximately 14 images and 53 videos of child pornography were identified on the Defendant's cellular phone.

While the interview was taking place, the Defendant's residence was searched.  During the search of the Defendant's residence, law enforcement located a book containing images of child pornography, titled "Show Me! A Picture Book of Sex for Children and Parents."  The Defendant at first explained that he had purchased this book accidentally at an estate sale when he purchased a number of other books.  He later stated that a "friend" had given him the book to "get rid of" but he would not provide anymore information about this "friend" to law enforcement.

During the interview, the Defendant was confronted with the fact that child pornography was found on a Toshiba external hard drive recovered in the Defendant's kitchen.  The Defendant replied, "I fucked up" and went on to state that he remembered looking at a couple of videos on a porn site and in the comments under the videos, a couple of links were imbedded that contained videos or images.  The Defendant stated that he downloaded from the links—that he "hoarded it."  When asked when he started looking for child pornography, the Defendant stated it was a "curiosity" with the links and when he saw "stuff" he didn't want to watch it but he was not sure what to do with it.  The Defendant stated that he started a couple of years prior and he would access child pornography when he was on Pornhub and other users would share links along with comments such as, "you'll like this too," but the Defendant stated he would only actively seek girls who were as young as "17, maybe 14."  When the Defendant was asked why he downloaded and saved these images, the Defendant replied that he would sometimes download folders or links to look at a later time.  The Defendant admitted that "15, 16, 17" was an age range that he would view.  The Defendant admitted that he would click on links, download to save the images to his laptop, and then save the images to an external device from his laptop.  The Defendant stated that the Toshiba external device would typically be connected

to his laptop.   The Defendant confirmed that he had started viewing and saving child pornography to the Toshiba external drive a couple of years earlier.

A preliminary forensic examination was conducted on scene at the Defendant's residence.   It revealed multiple folders saved to the Defendant's Toshiba external hard drive under what appeared to be female names.   Specifically, law enforcement located a folder containing approximately 19 digital files depicting child pornography, including images and videos.

On October 13, 2020, the Defendant was ultimately arrested and charged by Complaint with receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(a)(5)(B).   [DE 2].   On November 12, 2020, the Defendant was charged by Indictment with the same offenses.   [DE 16].

### III.    Subsequent Forensic Analysis of the Defendant's Devices

A forensic review of the devices seized from the Defendant's residence, along with the Defendant's cellular phone, which was provided with his consent, revealed multiple images and videos of child pornography spread across at least five different electronic devices.   While the forensic review of these devices is on-going, so far law enforcement has identified approximately 2,180 images and 12 videos of child pornography on the Defendant's Toshiba external hard drive alone.   Law enforcement has identified approximately 14 images and 53 videos of child pornography on the Defendant's Samsung Galaxy Note S9 cellular telephone.   Law enforcement also reviewed a Panasonic CF-53 laptop computer recovered from the Defendant's residence. The registered owner of the computer was listed as "SH."   On the laptop, law enforcement identified approximately 31 images and 1 video of child pornography.   On another Panasonic CF-30 laptop computer recovered from the Defendant's residence, law enforcement identified

approximately 80 images and 1 video of child pornography.  On a Hitachi hard drive recovered from the Defendant's residence, law enforcement identified approximately 1 video of child pornography that is approximately 7 minutes in length.

Finally, as previously mentioned, a review of the Samsung SM-T380 Tablet that was recovered from the Defendant's residence, revealed the Kik application.  The username for the Kik account was "trainreq2020," which is similar to the "trainreq" username associated with the distribution of child pornography on July 27, 2020.

## ARGUMENT

The Defendant now moves the Court to suppress the evidence seized in connection with the search warrant and requests a *Franks* hearing.  DE 53, 54.  In his motion and corresponding memorandum, the Defendant casts a wide net and argues that: (1) the search warrant application was deficient because it included a "misleading" description of the image of child pornography and did not include a copy of the image along with the application; (2) Special Agent Nicole Sorrell, who has been an agent with HSI since 2009, and working on child pornography investigations since 2017, was not qualified to assess whether the image depicted a minor; (3) he is entitled to a *Franks* hearing; (4) the information contained in the search warrant affidavit was stale; and finally, (5) the good faith exception does not apply.  Each of these arguments fails and the Government will address each in turn.

### A.  <u>The Search Warrant Affidavit Established Probable Cause</u>

The Defendant's first argument can be distilled down to his disagreement with the fact that a copy of the child pornography image was not presented to Magistrate Judge Boal for her review in connection with the search warrant application.  To be clear, the law in the First Circuit provides *two* avenues for judges to review child pornography images in connection with search

warrant affidavits: (1) a detailed, factual description of the images, *or* (2) in-person review of the images by a judge. *See United States v. Brunette*, 256 F.3d 14, 18 (2001) ("A judge cannot ordinarily make this determination without either a look at the allegedly pornographic images, or at least an assessment based on a detailed, factual description of them."); *United States v. Syphers*, 426 F.3d 461, 467 (1st Cir. 2005) ("The best practice is for an applicant seeking a warrant based on images of alleged child pornography to append the images *or* provide a sufficiently specific description of the images to enable the magistrate judge to determine independently whether they probably depict real children.") (emphasis added); *United States v. LaFortune*, 520 F.3d 50, 58 (1st Cir. 2008) (holding same). Here, Special Agent Sorrell provided a detailed, factual description of the image of child pornography such that Magistrate Judge Boal was able to make a probable cause determination that the image probably depicted a child and issue the search warrant.

Importantly, in *Brunette*, the First Circuit provided that, in the situation where copies of the suspected child pornography images cannot be feasibly obtained and presented to the Court (such as in the case of a global pandemic), "a detailed description, including the focal point and setting of the image, and pose and attire of the subject, will generally suffice to allow a magistrate judge to make a considered judgment." *Id.* at 20. That is exactly the type of description that was provided in this case by Special Agent Sorrell in the search warrant affidavit at paragraph 12:

> [T]he image distributed by trainreq depicts a prepubescent girl who appears to be approximately 9 – 11 years old, posed lying on a floor completely nude with her feet up on a chair. The child's genital area is the focus of the image, and the child appears to be spreading her buttocks to further expose her genital area to the camera, which are clearly visible. There appears to be no hip or breast development or pubic hair on the child, and child's face is obscured by the positioning of her body.

Special Agent Sorrell provided the approximate age of the child (9-11 years old) and then provided a detailed description of the image, including the focal point (the child's genitals), the setting of the image and pose of the child (lying on a floor with her feet up on a chair), and the child's attire (naked).  This description falls squarely within the detailed description called for by *Brunette*.  Special Agent Sorrell also provided a "detailed description of the physiological features" of the child depicted in the image.  *See United States v. Syphers*, 426 F.3d 461, 466 (1st Cir. 2005).  She described the child as prepubescent and went on to describe that that, "[t]here appear[ed] to be no hip or breast development or pubic hair on the child, and child's face is obscured by the positioning of her body."  SW Aff. at ¶ 12.  This description goes well beyond the description provided in *Brunette*, which simply described the images of child pornography as "photographs of a pre-pubescent boy lasciviously displaying his genitals," *see Brunette,* 256 F.3d at 15, and clearly provided a basis for finding probable cause.[6]

---

[6] Throughout his motion, the Defendant continually cites to the "substantial risk" language included in *United States v. Syphers*, 426 F.3d 461 (1st Cir. 2005).  *See* Def's Memo, at 6, 8, 19.  However, relying on the "substantial risk" language without providing the context of this case is misleading.  In *Syphers*, the application "did not include the images seized previously or provide any detailed description of the physiological features of the persons depicted in those images (i.e., by describing body proportion, growth, and development.)"  The First Circuit on review did not decide whether there was probable cause for the issuance of the warrant and instead found that the good faith exception to the exclusionary rule applied.  In dicta, the Court stated:

> The best practice is for an applicant seeking a warrant based on images of alleged child pornography to append the images or provide a sufficiently specific description of the images to enable the magistrate judge to determine independently whether they probably depict real children.  *An officer who fails to follow this approach without good reason faces a substantial risk that the application for a warrant will not establish probable cause.*

*Id.* at 467 (emphasis added) (citing *Brunette*, 256 F.3d 20).  Obviously, in this instance, the Court again is providing two avenues for review of child pornography images (appending or providing a description).  Furthermore, in subsequent cases where the "substantial risk" language has been cited by defendants, such as *United States v. Morel*, 922 F.3d 1, 11 (1st Cir. 2019), the First Circuit has clarified that the risk described is not a certainty that there is no probable cause, since it is the Fourth Amendment standard that governs this review.  In *Morel*, the First Circuit stated

The Defendant's argument that the description of the image is misleading is without merit. *See* Def's Memo, at 8 [DE 54]. The Defendant seizes upon three points with regard to the description of the child in the image—the child's hip development, breast development, and pubic hair. Essentially, the defense attorney disagrees with Special Agent Sorrell's assessment with regard to the child's lack of hip and breast development and provides an alternative explanation for the lack of pubic hair on the child hypothesizing that the vagina may have been shaved. *Id.* at 8-9. The Defendant's alternative explanation as to why the child does not have pubic hair is entirely speculative. The defense attorney's disagreement with Special Agent Sorrell's assessment regarding the child's hip and breast development does not support a finding that the description was misleading. Special Agent Sorrell described the position of the child in the search warrant affidavit, stating that the child "is posed lying on a floor completely nude with her feet up on a chair" and also explaining that the child's face is obscured by her position. SW Aff. ¶ 12. Having explained the position of the child, Special Agent Sorrell advised that "there appears to be no hip or breast development." *Id.* While the child's breasts are not visible based upon the position, the point is that if there was breast development, the child's breasts would likely be visible. The defense attorney's disagreement with Special Agent Sorrell's experienced opinion does not give rise to a conclusion that the description was misleading.

The Defendant also takes issue with the "poor quality" of the image. *See* Def's Memo, at 9. However, law enforcement does not choose the images that it receives and investigates. Here, Kik provided a copy of this image to law enforcement after identifying it as suspected child pornography based upon their PhotoDNA technology. Kik states in their Kik Interactive, Inc. Child Sexual Abuse and Illegal Material Report and Glossary, "Please note that the image Kik

---

that the defendant was "overread[ing]" this language. *Id.* That is the case here.

provides may be a scaled down version of the image that the user uploaded to the Kik app.  This means that if you try and generate the hash from the provided image, it may not match the hash indicated in the report."  Ex. 2, at 4.  The image provided to law enforcement is not the original image.

The Defendant's statement that the image may contain a "virtual child" is merely conjecture.  The fact remains that Special Agent Sorrell adequately and accurately described the image for Magistrate Judge Boal and that description enabled Magistrate Judge Boal to determine that the image *probably* depicted a real child and that evidence of child pornography would *probably* be found at the Defendant's residence.  *See United States v. Syphers*, 426 F.3d 461, 465 (1st Cir. 2005) ("This case concerns the sufficiency of the affidavit to support probable cause, not the sufficiency of evidence for a conviction.  Probable cause only requires a probability or substantial chance of criminal activity, not an actual showing of such activity.") (internal quotations and citations omitted).   That decision is entitled to deference and should be upheld. *See Illinois v. Gates*, 462 U.S. 213, 236 (1983) ("A magistrate's determination of probable cause should be paid great deference by reviewing courts.") (internal quotation marks omitted).

Finally, to the extent the Court finds that it would have been preferable in this instance to provide a copy of the image to Magistrate Judge Boal for her review, the fact remains that this search warrant was presented and executed during the height of a global pandemic and the CARES Act and the administrative orders issued by Chief Judge Saylor preceding and following October 2020 made allowances to the policies and procedures of this District in light of Covid-19.  *See e.g.*, General Order 20-33 dated September 24, 2020 (ordering that felony pleas and felony sentencing cannot be conducted in person in the District of Massachusetts without

seriously     jeopardizing     public     health     and     safety)     available     at https://www.mad.uscourts.gov/general.  In this case, an allowance is particularly warranted since the image at issue is contraband material.  The image cannot be emailed, faxed, mailed, transmitted over the internet, or presented in any other way other than by hand delivery. Certainly, the nature of the image and the state of the world at the time this affidavit was presented qualifies as good cause to include a detailed and factual summary of the image, rather than provide the image for in-person review.

**B.  Special Agent Sorrell was Well-Qualified to Assess the Image of Child Pornography**

The Defendant attacks Special Agent Sorrell's experience stating that she was not qualified to give an opinion on the age of the child depicted in the image.  However, Special Agent Sorrell has been an agent with HSI since 2009 and, as she explained in the search warrant affidavit, she is authorized to investigate child pornography offenses.  SW Aff. ¶ 1.  Special Agent Sorrell received training in the investigation of these cases and observed and reviewed examples of child pornography prior to the submission of this search warrant application.  *Id.* This background adequately qualified Special Agent Sorrell to serve as the affiant on the search warrant affidavit.

Furthermore, in connection with the Defendant's Motion, defense counsel requested more information related to Special Agent Sorrell's background, which the Government provided to defense counsel via email on April 30, 2021, as follows:

> Special Agent Sorrell received and completed the Criminal Investigator Training Program and HSI Special Agent Training at the Federal Law Enforcement Training Center in May 2010.  Her education includes a B.S. in Criminal Justice from Northeastern University, and an M.Ed. in Curriculum and Instruction-Elementary Education, from the University of Massachusetts Lowell.  Special Agent Sorrell has been an agent of HSI since 2009, and assigned to the Child Exploitation and Forensics Group since July 2017.

16

As part of her duties, Special Agent Sorrell is authorized to investigate violations of the laws of the United States, including criminal violations relating to child exploitation, child pornography, coercion and enticement, and transportation of minors, including but not limited to violations of 18 U.S.C. §§ 2422, 2423, 2251, and 2252A. She has received on-the-job training and has attended specialized trainings and workshops in the investigation of child exploitation offenses, including child pornography, and has had the opportunity to observe and review examples of child pornography (as defined in 18 U.S.C. § 2256).

Special Agent Sorrell has served as the lead case agent and affiant on over twenty investigations involving child exploitation offenses, and has been involved with the investigation, execution of search warrants, and victim and suspect interviews in over forty cases. During her time with HSI Boston, she has viewed thousands of evidentiary images and videos depicting child exploitation crimes, including depictions of children as young as infants through adolescence. Additionally, in October 2020, Special Agent Sorrell attended and completed the Virtual National Law Enforcement Training on Child Exploitation.

Relying upon this description, the Defendant attempts to argue that Special Agent Sorrell is not qualified because she has "only been a part of the Child Exploitation and Forensic Group since July 2017." *See* Def's Memo, at 10. Essentially, the Defendant is arguing that over three years of experience in a group that deals exclusively with crimes against children is not enough experience to serve as an affiant. That position is untenable. Furthermore, as outlined above, Special Agent Sorrell has reviewed thousands of images of child pornography. In this case alone, approximately 2305 images and 68 videos of child pornography were identified from hundreds of thousands of images on the Defendant's devices. Finally, the Defendant's insinuation that Special Agent Sorrell attempted to overstate her experience defies logic where Special Agent Sorrell was exclusively working these cases for over three years at the time that this search warrant was presented—she had no need to overstate her experience.

The cases that the Defendant cites in support of his "inexperience" argument are either inapposite or support the Government's position. *United States v. Vigeant*, 176 F.3d 565 (1st Cir. 1999), for example, which the Defendant cites on page 10 of his Motion, was a felon-in-

possession case where a search warrant was obtained for the defendant's residence with references to a continuing drug and money laundering conspiracy based upon the affiant's reliance on an unreliable confidential informant. The First Circuit found that references in the search warrant affidavit to "front companies" and "layering" were conclusory and not supported by evidence and therefore amounted to "foundationless expert testimony." *Id.* at 574. *Vigeant* bears no similarity to the instant matter.

The Defendant also relies upon *United States v. Morel*, 922 F.3d 1 (1st Cir. 2019), for support. However, *Morel* supports the Government's position. In *Morel*, the relevant issue on appeal was whether the search warrant was supported by probable cause, specifically, whether there was probable cause to believe that the girls depicted in the images were under eighteen. *Id.* at 11. In *Morel*, the detective did not attach suspected images of child pornography *or* provide detailed descriptions of the child pornography images in support of a search warrant that was presented at the state level. *Id.* The Court found that, even in light of this fact, the search warrant affidavit was sufficient to establish probable cause. *Id.* at 12.

In support of this conclusion, the Court in *Morel* relied upon the detective's statement in the affidavit that he "believed that at least four of the girls depicted in three of the images were under the age of ten." *Id.* at 11. In reaching this conclusion, the First Circuit stated that, "[a]n under-ten-year-old girl does not look like, and is not mistaken for, an eighteen-year-old-girl." *Id.* at 12. "While images of older minor girls may require more evidence of age, that is not true for images of girls aged under ten." *Id.* The Court went on to find that it was "highly improbable" that the detective, who was experienced and trained in the child exploitation field, would mistake an eighteen-year-old girl for an under-ten-year-old girl. *Id.* In reaching this conclusion, the Court relied upon the detective's experience (police officer for over two decades, received

specialized training in child abuse and exploitation cases, had been on the Internet Crimes Against Children Task Force for nearly a decade, and assisted in the execution of about fifty search warrants related to possession and distribution of child pornography).  *Id.* at 12.  Here, Special Agent Sorrell was on the squad dealing exclusively with child exploitation crimes for over three years at the time the search warrant was executed, she has been the lead case agent on over twenty investigations and has been involved in the investigation of over forty cases.  She has received specialized training in this area and reviewed thousands of images of child pornography.  Her specialized experience in this area is very similar to the detective in *Morel*—a decade of experience is not required to assess the age of a child or serve as an affiant.

The Defendant's reliance on *Brunette*, is similarly misplaced.  *See* Def's Memo, at 12-13.  Not only was the agent's experience in *Brunette* different from Special Agent Sorrell's experience, the search warrant affidavit included a minimal description of the images.  In *Brunette*, the affiant on the search warrant affidavit was a U.S. Customs agent.  256 F.3d at 15.  He had approximately eighteen months of experience investigating child pornography crimes and during that time had testified only twice before in support of search warrants.  *Id.* at 18.  The search warrant affidavit simply parroted back the language of the statute that the images depicted a prepubescent boy lasciviously displaying his genitals.  *Id.* at 17.  Those are not the facts of this case.

Finally, the Defendant states that the Government should have done more to "investigate the image," such as interviewing the Defendant and consulting an expert, such as a pediatrician.  Def's Memo, at 12-13.  However, the Defendant himself concedes that such steps are not required.  *See id.*, at 13, fn 9; *see LaFortune*, 520 F.3d at 54-58 (addressing and rejecting the argument that factfinders need "informed lay opinion" testimony and cannot rely upon their own

evaluation in order to determine whether images depict actual or virtual children).  This image was received from Kik after it was flagged by their PhotoDNA technology as an image of suspected child pornography.  The image was reviewed by a member of Kik's law enforcement team who was trained on such matters and again confirmed to be suspected child pornography.  It was then reviewed by a Special Agent with the requisite experience to confirm that the image contained child pornography.  This image was then described to a Magistrate Judge who confirmed that the image met the standard for child pornography.  No additional investigation into this image was needed.  The totality of the information outlined in the affidavit in support of the search warrant established the fair probability that evidence of child pornography offenses would be found at the Defendant's residence and on his person.  *See United States v. Anzalone*, 923 F.3d 1, 5 (1st Cir. 2019) ("Anzalone forgets that probable cause determinations hinge not on discrete pieces of standalone evidence, but on the totality of the circumstances").  The role of this Court is to simply ensure that the magistrate judge had a substantial basis for concluding that probable cause existed.  *See Illinois v. Gates*, 462 U.S. 213, 236 (1983).  Magistrate Judge Boal committed no error in issuing the warrant based on her review of the search warrant affidavit and the Defendant's motion should be denied.

### C.  Defendant's Request for a *Franks* Hearing Should be Denied

The Defendant has also failed to demonstrate that the search warrant affidavit contained a misleading statement.  Accordingly, his motion for a *Franks* hearing must be denied.  The Supreme Court has recognized a presumption of validity with respect to an affidavit supporting a search warrant.  *See Franks v. Delaware*, 438 U.S. 154, 171 (1978).  Under *Franks,* it is only "where [a] defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the

warrant affidavit, and [where] the allegedly false statement is necessary to the finding of probable cause, [that] the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks,* 438 U.S. at 155-56.  Failure to make a showing on either element dooms a party's hearing request.  *United States v. Rigaud*, 684 F.3d 169, 173 (1st Cir. 2012).

The Defendant bases his request for a *Franks* hearing on Special Agent's Sorrell's description of the image, namely the child's lack of hip and breast development and the lack of pubic hair, and what the Defendant believes is Special Agent Sorrell's omission as to her "actual experience in child pornography cases."  *See* Def's Memo, at 14-15.  As previously discussed, each of these points fail.  They certainly do not rise to the requisite "deliberate falsehood or reckless disregard for the truth," which is required for a *Franks* hearing.  Accordingly, the Defendant's request should be denied.

**D.  <u>The Information in the Search Warrant Affidavit was not Stale</u>**

The Defendant argues that the information that led to the search warrant for the Defendant's residence was stale.  However, courts have recognized the unique nature of child pornography crimes when conducting a staleness inquiry.  *See United States v. Morales-Aldahondo*, 524 F.3d 2008, 119 (1st Cir. 2008) ("When evaluating a claim of staleness, we do not measure the timeliness of information simply by counting the number of days that have elapsed. Instead, we must assess the nature of the information, the nature and characteristics of the suspected criminal activity, and the likely endurance of the information.") (citing *United States v. Pierre*, 484 F.3d 75, 83 (1st Cir. 2007)) (internal citations omitted).  This is based upon both the characteristics of child pornography offenders, who often keep their collection for lengthy periods of time, and the fact that evidence of child pornography offenses can be recovered from a device almost indefinitely.  *See e.g., See United States v. Carroll*, 750 F.3d

700, 704-705 (7th Cir. 2014) (in evaluating whether information is too stale to create a fair probability that evidence of child pornography or sexual exploitation of a child will be found on a computer or other digital storage device "we recognize that a staleness inquiry must be grounded in an understanding of both the behavior of child pornography collectors and of modern technology.").  Based upon Special Agent Sorrell's training and experience, she outlines in the search warrant affidavit, that consumers of child pornography may "collect sexually explicit or suggestive materials in a variety of media, including in hard copy and electronic format in order to use these materials for sexual arousal or gratification.  *See* SW Aff. ¶ 26. Consumers of child pornography will "often maintain their digital or electronic child pornography in a safe, secure, and private environment" and these images are often maintained for "several years" to enable the individual to view the child pornography images, which "are valued highly."  *Id.*   The affidavit further outlines that evidence of such activity, including deleted child pornography, often can be located through the use of forensic tools for "extended periods of time."  *Id.*  The law has continually recognized these characteristics common to child pornography consumers. *See e.g., United States v. Rosenbeck*, No. 09-30042-DJC, 2011 WL 2533076, at *7-8 (D. Mass. June 24, 2011); *United States v. Burkhart*, 602 F.3d 1202, 1206 (10th Cir. 2010) ("This court has repeatedly endorsed the view that possessors of child pornography are likely to hoard their materials and maintain them for significant periods of time."); *United States v. Paull*, 551 F.3d 516, 522 (6th Cir. 2009) ("[B]ecause the crime [of child pornography] is generally carried out in the secrecy of the home and over a long period, the same time limitations that have been applied to more fleeting crimes do not control the staleness inquiry for child pornography."); *United States v. Vosburgh*, 602 F.3d 512, 528-29 (3d Cir. 2010) ("[P]ersons with an interest in child pornography tend to hoard their materials and retain them

22

for a long time."); *United States v. Irving*, 452 F.3d 110, 125 (2d Cir. 2006) (concluding staleness determination "is unique because it is well known that 'images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes'" (citation omitted)).

In this case, approximately fifteen months passed between the generation of the Kik Report and the execution of the search warrant.  The search warrant affidavit provided a clear foundation for the Court to make a probable cause determination that evidence of child pornography would likely still be found at the Defendant's residence based upon his conduct and characteristics.  *See United States v. Allen*, 625 F.3d 830, 843 (5th Cir. 2010) (upholding eighteen-month delay between facts underlying the warrant and the date the warrant was issued in a child pornography case) (collecting cases);  *United States v. Frenchette*, 583 F.3d 374 (6th Cir. 2009) (upholding a sixteen-month delay in a child pornography case).

In *Morales-Aldahonda*, 524 F.3d 115, 119 (1st Cir. 2008), which the Defendant cites favorably, the defendant argued that the passage of *more than three years* from the acquisition of the evidence until the warrant application rendered the evidence stale and precluded a legitimate finding of probable cause by reducing the likelihood that the "evidence of the offense [would] be found at the place to be searched."  *Id.* at 119.  The First Circuit disagreed with the defendant, finding that the warrant application "provided considerable support for the government's position that consumers of child pornography sites do not quickly dispose of their cache" and upheld the warrant even though more than three years had passed since the conduct.  *Id.* Similarly, in *United States v. Rosenbeck*, No. 09-30042-DJC, 2011 WL 2533076 (D. Mass. June 24, 2011), this Court found that information was not stale where more than a year had passed between when the defendant was first identified and when the agents sought the search warrant

23

for the defendant's residence, relying in part, upon the fact that the search warrant affidavit provided "ample evidence" to suggest that the defendant was a collector of child pornography and child pornography collectors may retain their collections for lengthy periods of time.

The Defendant's attempt to distinguish himself from collectors of child pornography fails. *See* Def's Memo, at 15. The Defendant's conduct warranted such a classification. Special Agent Sorrell's affidavit discusses how a "growing phenomenon" related to mobile devices is the use of mobile applications (such as Kik) to "receive, store, distribute, and advertise child pornography, to interact directly with other like-minded offenders or with potential victims." SW Aff. ¶ 25. In this case, the Defendant actively distributed an image of child pornography from his residence using the Kik application. As is outlined in the search warrant affidavit, Kik is a messaging application. In order to distribute this image, the Defendant had to download the mobile application to a device, register a Kik account with a username and an email address, and then, using that account, the Defendant had to locate and possess an image of child pornography in order to be able to distribute it to others on the Kik application. This is not a case where the Defendant was a passive recipient of an image of child pornography. Instead, he took action to provide an image of child pornography to others. The Defendant's conduct supported the conclusion that he was a consumer of child pornography. And, as demonstrated by the number of images and videos of child pornography found on multiple devices at the Defendant's residence, this conclusion was accurate.

For all of these reasons, the information in the search warrant affidavit was not stale and the Defendant's motion should be denied. *See United States v. Seiver*, 692 F.3d 774, 778 (7th Cir. 2012) ("The most important thing to keep in mind for further [child pornography and sexual exploitation] cases is the need to ground inquiries into 'staleness' and 'collectors' in a realistic

understanding of modern computer technology and the usual behavior of its users.  Only in the exceptional case should a warrant to search a computer for child pornography be denied on either of those grounds . . . .").

### E.  The *Leon* "Good Faith" Exception Applies to this Case

Even if this Court finds that the magistrate judge erred in issuing the search warrant, the defendant's motion must be denied as the search was justified by the good-faith exception enunciated in *United States v. Leon*, 468 U.S. 897 (1984), as the agents acted in objectively reasonable reliance on the warrant.  Supreme Court precedent dictates that suppression is a remedy of last resort, to be used for the sole purpose of deterring future Fourth Amendment violations, and only when the deterrence benefits of suppression outweigh its heavy costs.  *See Davis v. United States*, 564 U.S. 229, 237 (2011); *Herring v. United States*, 555 U.S. 135, 140-141 (2009).  "The fact that a Fourth Amendment violation occurred – *i.e.,* that a search or arrest was unreasonable – does not necessarily mean that the exclusionary rule applies."  *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 223 (1983)).  "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter is, and sufficiently culpable that such deterrence is worth the price paid by the justice system."  *Herring*, 555 U.S. at 144.

The Defendant's assertion that the search warrant affidavit contained misleading information is without merit.  Accordingly, the good faith exception would apply to this case and the evidence derived from the warrant would be admissible.  *See United States v. Raymonds*, 780 F.3d 105 (2nd Cir. 2015)("[t]he exclusionary rule is designed not to redress minor overstatements or simple negligence by the police, but to deter deliberate, reckless, or otherwise inexcusable violations."); *see also Herring v. United States*, 555 U.S. 135 (2009)("[t]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some

circumstances recurring or systemic negligence.   The error in this case does not rise to that level.").

## CONCLUSION

WHEREFORE, for the foregoing reasons, the undersigned respectfully requests that this Court deny the Defendant's Motion to Suppress without a hearing.


Respectfully submitted,

NATHANIEL R. MENDELL
ACTING UNITED STATES ATTORNEY

By:    /s/ J. Mackenzie Duane
        J. Mackenzie Duane
        Assistant United States Attorney
        One Courthouse Way, Suite 9200
        Boston, Massachusetts 02210
        (617) 748-3654
        Mackenzie.duane@usdoj.gov

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that I filed the foregoing document, the United States of America's Response in Opposition to the Defendant's Motion to Suppress with the Court and counsel via CM/ECF.

/s/ J. Mackenzie Duane
Assistant United States Attorney