## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) |
| v. | ) ) |
| SPENCER HUGHES,<br>            Defendant. | ) ) ) ) |

No. 20-cr-10273-DJC

## DEFENDANT'S RESTITUTION MEMORANDUM

The Defendant, Spencer Hughes ("Hughes"), submits for the Court's consideration the following memorandum concerning restitution in this matter. The government has identified five known victims in this case and is seeking restitution on behalf of each of them. Of the five, the parties have agreed to restitution in the amount of $3,000 each for victims identified as "Jenny" and "Erika". The parties were unable to agree on restitution amounts for "Violet" from the "At School" series, "Maria" from the "Best Necklace" series and "Tara." Hughes submits that the Court should order restitution in the amount of $3,000 each for Violet and Maria. Hughes further submits that no restitution should be awarded Tara.

## STANDARD

Restitution is mandatory for child pornography convictions. 18 U.S.C. § 2259(a). The Court may order restitution, however, "only to the extent the defendant's offense proximately caused a victim's loss." Paroline v. United States, 572 U.S. 434, 448 (2014). A restitution order should be "reasonable and circumscribed" and reflect the "role of the offender in the causal process underlying the victim's losses and suited to the relative size of that causal role." Id. at 459.

In reaching this determination, the Court should first "determine the amount of the victim's losses." Paroline, 572 U.S. at 460. The Court should then consider factors bearing on

the "relative causal significance of the defendant's conduct in producing those losses." Id. Those factors include:

> the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of [the broader number of offenders involved (most of whom will, of course, never be caught or convicted);] whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

Id. The government bears the burden of proving restitution by a preponderance of the evidence. 18 U.S.C. § 3664(e).

## DISCUSSION

### 1. Violet & Maria

Considering the factors relevant to restitution, an award of $3,000 is appropriate for Violet and Maria. Violet is requesting restitution from Hughes in the amount of $5,000. The government has represented that Hughes possessed one video of Violet. Violet's estimated damages are $758,343 to $803.968. As of the date materials were submitted on Violet's behalf, there were 452 orders of restitution entered in cases involving her images. Information concerning each order, such as number of images and restitution amounts, has not been provided. Nor has the total amount in restitution ordered been identified. Violet's representative has disclosed that she has recovered $281,111 from those orders.

Maria is represented by the same attorney as Violet. The government has represented that Hughes possessed one video of Maria. Maria is also seeking restitution in the amount of $5,000. Maria's estimated total damages are about $125,000. No information has been provided concerning Maria's prior restitution orders or amounts recovered.

Hughes submits that the facts of this case support a restitution orders of $3,000 for both Violet and Maria.  Hughes possessed a single video of each victim.  He did not engage in the distribution or production of any of the images or videos he possessed.  Nor did Hughes actively seek out images or videos of the victims.  Hughes was an end-user of these materials.  There are no aggravating factors that would warrant an amount above the minimum mandatory $3,000.  Under the circumstances, therefore, restitution in the amount of $3,000 each for Violet and Maria is appropriate.

### 2. Tara

Tara's total damages are unclear.  The government has represented that Hughes possessed two videos of Tara.  Tara has requested a $3,000 in restitution.  Tara appears to be representing herself.  Tara has not provided a sworn affidavit in support a claim for additional damages.  There is also no information about the number of prior restitution orders or the amounts previously collected.

Tara has provided an eight-page packet of what appear to be primarily a summary page of expenses and ledgers identifying invoices.[1]  Based on the information Tara provided, it appears that her damages are about $274,043.65.  The bulk of Tara's restitution claims relate to apparent harassment Tara received from some unidentified individual(s) in about 2012, which predated Hughes's offense conduct.[2]  Tara has apparently received $122,372.38 from insurance and unidentified "outside source (non-insurance)."  Tara has claimed that her "unreimbursed expenses" total $151,671.27.

Tara's claim concerning her unreimbursed expenses are inconsistent with previous representations.  In cases pre-dating this one, Tara and/or the government have represented that she

---

[1] The packet also included a receipt and a letter from a psychologist concerning her need to have a service dog with her on campus.
[2] The bulk of those claims relate to

3

has received full restitution that satisfied her compensable loss.  For example, in January 2011, Tara represented that she was "not requesting any amount of restitution because she has been paid in full by other defendants." See United States v. Monzel, No. 09-243 (GK), 2011 U.S. Dist. LEXIS 157150, at *2 (D.D.C. Jan. 11, 2011) (emphasis added).  Consistent with her January 2019 representation, in January 2019 the government represented that "the victim in the 'Tara' series is no longer seeking restitution."  See United States v. Hollman, No. 1:18-cr-10037-JBM-JEH-1, 2019 U.S. Dist. LEXIS 19371, at *2 (C.D. Ill. Jan. 14, 2019).

Roughly a year-and-a-half later, Tara represented that her "unreimbursed" loss stood at $18,136.40.  See United States v. Lawson, No. 7:17-14-KKC, 2020 U.S. Dist. LEXIS 126286, at *2 (E.D. Ky. July 17, 2020).  In Lawson, the government stated that it "cannot recommend a restitution order with respect to Tara because her request does not sufficiently identify outstanding loss amounts that are compensable under federal law."  Id.  The Court determined, therefore, that Tara should not receive any restitution based on the sparse record and the government's representation.  Id. at *8.

It is unclear how Tara's circumstances have changed so as to account for these discrepancies.  Her losses have increased from having been fully compensated in 2011 and 2019, to $18,136.40 in 2020, to $151,671.27 today.  The documents she submitted, however, do not support these increases.  The government has not presented evidence that circumstances have changed so as to warrant additional restitution.

The bulk of Tara's claim relates to conduct of an individual(s) who apparently engaged in harassing activity in 2012.  These include loss of housing due to the conduct of a harasser(s) in 2012 ($217,000), a tracker phone for protection ($5,484) and "expenses for PO Box to avoid harassment" ($3,639).  These damages were not proximately caused by Hughes.  They predated his offense conduct and he should not be held responsible for the acts of this individual(s).  In any

event, based on prior representations, those amounts were recovered as of January 2019.

In addition, the ledgers that Tara submitted offer no support for a restitution claim. Two pages of ledgers list payments for services at a treatment center from June 2008 to December 2009. (See HUGHES_496-97.) Tara was already fully compensated for those expenses by 2011.

Two other ledgers included in the packet are vague and cannot be shown to relate to being a victim of child pornography. The ledgers list entries with vague descriptions of "prescription" and "medical" from July 2020 to September 2021 totaling $3,639.84. (See HUGHES_498-99.) There is no information as to what these entries relate. Indeed, they may not relate to any damages relevant here. Without additional information, these entries cannot be verified and cannot be the basis of a restitution claim.[3]

In short, as the court in Lawson found, there is nothing on which the Court can determine damages or the amount of restitution for which Hughes should be responsible. Accordingly, the Court should not order restitution as it relates to Tara.

## **CONCLUSION**

For the reasons stated above, Hughes requests that the Court order restitution as follows:

    A. Jenny - $3,000;

    B. Erika - $3,000;

    C. Violet – $3,000;

    D. Maria – $3,000; and

    E. Tara – No restitution.

---

[3] Even assuming, *arguendo*, that these expenses are relevant, it is unclear if Tara has previously sought restitution for these expenses or recovered any of that amount. Based on the statutory minimum of $3,000 per victim, this information is necessary to determine restitution in this case.

|  | SPENCER HUGHES<br>By his attorney, |
|---|---|
|  | /s/ Matthew D. Thompson<br>Matthew D. Thompson, Esq.<br>BBO NO. 655225<br>Butters Brazilian LLP<br>669 Boylston Street, 12th Floor<br>Boston, MA 02116<br>(o) 617-367-2600<br>(f) 617-367-1363 |
| Dated: August 4, 2022 | thompson@buttersbrazilian.com |

**CERTIFICATE OF SERVICE**

I hereby certify that the above document was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

/s/ Matthew D. Thompson
Matthew D. Thompson